KARMOL v ENCOMPASS PROPERTY AND CASUALTY COMPANY

Docket No. 298366. Submitted July 12, 2011, at Detroit. Decided July 26, 2011, at 9:05 a.m. Leave to appeal denied, 491 Mich 885.

Justin Durand, a minor, suffered injuries in an automobile accident. During the first year of his convalescence, all his hospital and medical expenses were paid by a health benefit plan established under the Employee Retirement Insurance Security Act (ERISA), 29 USC 1001 *et seq.*, that was administered by Paramount Care, Inc. Justin's entitlement to the benefits stemmed from the status of his mother, Kristine K. Karmol, as a subscriber of the self-funded plan. Karmol also had a no-fault automobile insurance policy issued by Encompass Property and Casualty Company. The ERISA plan designated the plan as a secondary payor when a member is entitled to benefits under a no-fault insurance policy and contained a coordination-of-benefits provision that named Karmol's health-care insurer as the primary source of coverage. One year after the accident, Paramount sued Encompass in the United States District Court for the Western District of Ohio, seeking reimbursement of the funds it had expended on Justin's behalf. That same day, Kristine Karmol and Justin Durand, by his next friend, Kristine Karmol, brought an action in the Lenawee Circuit Court against Encompass and Paramount, alleging breach of contract and seeking a declaratory judgment, interest, costs, and attorney fees. After a settlement was reached in the federal lawsuit whereby Encompass agreed to shoulder liability for Justin's personal protection insurance benefits, the parties in the Lenawee Circuit Court action stipulated to Paramount's dismissal from the action. Encompass sought summary disposition, contending that the no-fault insurance claim lacked a factual basis because plaintiffs had not personally incurred any costs or expenses. After that motion was denied and discovery disputes erupted, the circuit court, Timothy P. Pickard, J., sanctioned Encompass for discovery misconduct by entering an order granting Karmol a default judgment and awarding her attorney fees, costs, and interest. Encompass appealed.

The Court of Appeals *held*:

1. A claimant's right to personal protection insurance benefits under the no-fault insurance act arises not when an injury occurs but when an allowable expense is incurred. A claimant incurs an expense when he or she becomes liable for the cost. Such benefits become overdue in accordance with MCL 500.3142(2) if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If benefits are not timely paid after an expense is incurred, interest begins accumulating pursuant to MCL 500.3142(3) and attorney fees become recoverable under MCL 500.3148(1). Because the purpose of the interest-penalty provisions is to see that the injured party is quickly paid, these statutes do not apply when the dispute involves two insurers acting in good faith.

2. No evidence suggests that Encompass delayed in paying no-fault benefits to Karmol. In relation to Karmol, no-fault benefits were never overdue. No evidence suggests that Karmol incurred a single expense. The circuit court erred by awarding Karmol interest, costs, and attorney fees and denying Encompass's motion for summary disposition.

Reversed and remanded for entry of a judgment in favor of Encompass.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — RIGHT TO BENEFITS — INCURRED EXPENSES — OVERDUE BENEFITS — INTEREST — ATTORNEY FEES — GOOD-FAITH DISPUTE BETWEEN INSURERS.

A claimant's right to personal protection insurance benefits under the no-fault automobile insurance act arises when an allowable expense is incurred, not when an injury occurs; a claimant incurs an expense when the claimant becomes liable for the cost; such benefits become overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and of the amount of the loss sustained; interest begins accumulating and attorney fees become recoverable if benefits are not timely paid after an expense is incurred; the interest-penalty provisions of the act do not apply when the dispute involves two insurers acting in good faith because the purpose of the provisions is to see that the injured party is quickly paid (MCL 500.3142[2] and [3]; MCL 500.3148[1]).

*Patrick R. Millican* for Kristine K. Karmol and Justin Durand.

*Vandeveer Garzia, P.C.* (by *Donald C. Brownell* and *Bryan R. Padgett*), for Encompass Property and Casualty Company.

Before: TALBOT, P.J., and HOEKSTRA and GLEICHER, JJ.

GLEICHER, J. When Justin Durand, a minor, suffered serious injuries in a car accident, both an Employee Retirement Insurance Security Act (ERISA), 29 USC 1001 *et seq.*, health benefit plan and a Michigan no-fault insurer bore responsibility for paying his medical expenses. The ERISA plan paid Justin's medical bills for one year before filing a lawsuit against the no-fault insurer seeking reimbursement. Eventually, the no-fault insurer agreed to shoulder liability for Justin's personal protection insurance (PIP) benefits. In the meantime, Kristine Karmol, Justin's mother, filed an action for herself and Justin, seeking attorney fees attributable to overdue no-fault benefits, despite that she had never been obligated to pay Justin's expenses. The circuit court entered a default judgment against the no-fault insurer in Karmol's favor, and awarded Karmol attorney fees, costs, and interest totaling $49,600.04.[1] We reverse.

## I. FACTS AND PROCEEDINGS

On February 28, 2006, Justin was a passenger in a vehicle that left the roadway and struck a mailbox, a concrete walkway, and a culvert before coming to rest. Justin endured severe injuries, including fractures of his hip joint, femur, and ankle. During the first year of Justin's convalescence, the ProMedica Physicians Group Employee Health Care Benefit Plan, adminis-

---

[1] As Karmol filed suit on behalf of herself as well as her minor son, we refer to her as the singular plaintiff.

tered by defendant Paramount Care, Inc., paid all of his hospital and medical expenses. Justin's entitlement to ProMedica health-care benefits stemmed from plaintiff Kristine Karmol's status as a subscriber in the Pro-Medica benefit plan, a self-funded employee-welfare benefit plan created and administered pursuant to the ERISA.[2] Karmol also owned a no-fault automobile insurance policy issued by defendant Encompass Property and Casualty Company.

The ProMedica plan designates ProMedica as a secondary payor when an insurance policy entitles a member to no-fault insurance benefits. The Encompass no-fault insurance policy contains a coordination-of-benefits (COB) provision that names Karmol's health-care insurer as the primary source of coverage. Luckily, a well-settled legal rule governs this conflict. In *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 389; 505 NW2d 820 (1993), our Supreme Court held that a self-funded ERISA plan trumps a no-fault insurance policy: "an unambiguous COB clause in an ERISA health and welfare benefit plan must be given its plain meaning despite the existence of a similar clause in a no-fault policy . . . ."

Exactly one year after Justin's accident, Paramount sued Encompass in the United States District Court for the Western District of Ohio, seeking reimbursement of the funds it had expended on Justin's behalf. That same day, Karmol filed a complaint in the Lenawee Circuit Court, naming as defendants Paramount and Encompass. Karmol's complaint averred that Paramount "ha[d]/and or [is] exercising subrogation and/or reim-

---

[2] Justin's parents are divorced. It appears that Justin's father is a participant in a different ERISA plan, administered by Ingenix Subrogation Services, through which Justin received limited benefits not at issue here.

bursement rights" from Karmol, and alleged that Encompass refused to pay "or is expected to refuse to pay" Justin's PIP benefits. The complaint set forth breach-of-contract and declaratory-judgment counts, and sought interest, costs, and "no-fault attorney fees." After Paramount and Encompass answered the complaint, the parties filed pretrial statements describing their case theories. Karmol's pretrial statement asserted, "Encompass has not paid no[-]fault benefits to plaintiffs for medical bills when they were first in priority to pay the bills."

Almost nothing occurred in the litigation until December 13, 2007, when Patrick R. Millican, Karmol's counsel, filed in the circuit court an "Affidavit of Progress."[3] Millican's affidavit declared that Encompass and Paramount had settled Paramount's federal court lawsuit, and asserted that "Plaintiff's [sic] are currently in the process of obtaining releases" from Paramount and Ingenix, Justin's father's ERISA plan. In March 2008, the parties stipulated to Paramount's dismissal from the instant lawsuit, leaving only Encompass as a defendant.

In April 2008, Encompass moved for summary disposition under MCR 2.116(C)(6), (7), and (10). Encompass contended that because Karmol had not personally incurred any costs or expenses, her first-party, no-fault claim lacked a factual basis. Encompass supported its motion by filing a copy of Encompass's check to Paramount for $155,580.72. In response, Karmol submitted an affidavit averring that "as of February 28, 2007, Encompass had not paid the medical bills in excess of $150,000.00 for treatment rendered to Justin M. Durand." Karmol further claimed that a question of fact

---

[3] Millican filed the affidavit after the circuit court placed the matter on "no progress" status.

existed concerning her entitlement to attorney fees. In a bench opinion, the circuit court denied summary disposition, reasoning that Karmol and Justin "have an obligation to preserve their claim. They have an obligation to do that. Otherwise, the insurance company can turn around and bill them for what they pay." Encompass moved for reconsideration, arguing that because Karmol had incurred no expenses or suffered any damages, she lacked standing to bring a claim against Encompass. The circuit court denied reconsideration. In denying Encompass summary disposition, the circuit court incorrectly focused on the one-year period of limitations applicable in PIP-benefit cases, MCL 500.3145, rather than considering the statutory provisions relevant to Karmol's claim for attorney fees and interest.

After the circuit court denied Encompass summary disposition, the lawsuit took on a life of its own. The parties exchanged copious interrogatories and requests for admission. Discovery disputes erupted, generating motions and countermotions, and bilateral accusations of misconduct. Amid the flurry of paper, a "Settlement Agreement and Mutual Release" emerged, embodying the terms of Encompass's final settlement with Paramount. In relevant part, the release recited Encompass's agreement "that it is the party primarily responsible for the payment of reasonable and necessary medical expenses incurred by Justin Durand as a direct and proximate result of the automobile accident . . . ." The Encompass claims file, produced during discovery, confirms that shortly after Justin's accident, an Encompass agent informed Karmol, "We will be responsible for replacement services, attendant care, mileage and any miscellaneous out of pocket" expenses. Pursuant to the COB provision in its policy, Encompass adjusted Jus-

tin's claim on the basis of its status as a secondary payor until ProMedica's ERISA bona fides came to light.

Notably absent from the record is any indication that Karmol had been asked to pay a medical bill, actually paid a medical bill, or had been threatened with the prospect of paying for any of Justin's care. Rather, the record evidence demonstrates that Paramount completely paid Justin's expenses until the date it settled its dispute with Encompass. At that point, Encompass assumed responsibility for Justin's PIP benefits. No evidence suggests that any charge for medical services ever qualified as "overdue." Nor have we found any indication that either Promedica or Encompass acted in bad faith.

In November 2009, the circuit court heard argument regarding the parties' discovery disagreements, and sanctioned Encompass for discovery misconduct by entering an order granting Karmol a default judgment. The order further stated "that the sole remaining issues in this case are the amount of attorney fees, costs and interest due to the Plaintiffs." Subsequently, the circuit court entered a judgment in favor of Karmol for $8,389.83 in interest, $40,730 in attorney fees, plus interest until fully paid, and $480.21 in costs.

## II. ISSUES PRESENTED AND ANALYSIS

Encompass challenges the circuit court's entry of a default judgment, the amount of the attorney fee award, and its responsibility to pay any penalty interest and attorney fees, and it finally asserts that the circuit court's bias precluded a fair and impartial adjudication. Essentially, Encompass argues that because it never unreasonably refused to pay no-fault benefits, the circuit court erred by awarding interest, costs, and attorney fees. This contention tracks Encompass's summary

disposition argument that Karmol never incurred any expenses, rendering meritless her first-party, no-fault claim. Because we find this argument dispositive of Encompass's other claims, we turn to an analysis of the circuit court's summary disposition ruling, which we review de novo. *Robertson v Blue Water Oil Co*, 268 Mich App 588, 592; 708 NW2d 749 (2005). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

An injured claimant's entitlement to first-party no-fault benefits arises from MCL 500.3107(1), which states, in relevant part:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

This provision of the no-fault insurance act, MCL 500.3101 *et seq.*, describes in general terms the nature of the benefits available to claimants. Encompass never challenged the reasonableness or necessity of Justin's medical or attendant-care expenses. Rather, Encompass insisted in its summary disposition motion that because Karmol never personally incurred any compensable expenses, no genuine factual dispute existed regarding Encompass's liability to Karmol.

Under the no-fault act, PIP benefits "accrue not when the injury occurs but as the allowable expense . . . is incurred." MCL 500.3110(4). Our Supreme Court clarified this principle in *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003),

explaining that a claimant "incurs" an expense when he or she becomes "liable" for the cost. "An insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services." *Id.* at 484 n 4. Thus, a claimant's right to PIP benefits arises when the claimant finds himself or herself on the hook for an expense.

Once an expense is incurred, however, a no-fault insurer may not dawdle in rendering payment. PIP benefits become "overdue" if not paid "within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). As our Supreme Court explained in *Proudfoot*, 469 Mich at 484-485, a loss is "sustained" when the expense is "incurred." If benefits are not timely paid after an expense is incurred, interest begins accumulating pursuant to MCL 500.3142(3), and attorney fees become recoverable under MCL 500.3148(1). Because the purpose of the interest-penalty provisions "is to see that *the injured party* is quickly paid," these statutes do not apply "when the dispute involves two insurers acting in good faith." *Allstate Ins Co v Citizens Ins Co of America*, 118 Mich App 594, 607; 325 NW2d 505 (1982) (emphasis added).

According to Millican, Karmol filed this lawsuit preemptively, based on her fear that Encompass, Paramount, or Justin's care providers would bill her directly for Justin's medical expenses. Alternatively, Karmol's complaint suggests that Karmol anticipated that Paramount would seek reimbursement from her, in addition to pursuing its federal court claim against Encompass. Karmol's action for a declaratory judgment was perfectly suited to allay these apprehensions. Indeed, "declaratory judgments exist to provide broad, flexible remedies for plaintiffs who seek guides for future con-

duct in order to preserve their legal rights." *Manley v DAIIE*, 127 Mich App 444, 450-451; 339 NW2d 205 (1983), aff'd in part and rev'd in part on other grounds 425 Mich 140 (1986). Karmol appropriately sought a judicial determination concerning Justin's right to no-fault coverage under the Encompass policy.

Similarly, Paramount and Encompass elected to re-solve their dispute without involving Karmol. This Court has emphasized that a "separate suit for indem-nification is the preferable method of handling such a dispute between insurers, since the injured person recovers for his injuries without delay while the insur-ers thereafter iron out their respective liabilities." *Farmers Ins Group v Progressive Cas Ins Co*, 84 Mich App 474, 484; 269 NW2d 647 (1978). In that spirit, Encompass and Paramount worked out their differ-ences in federal court, ultimately agreeing that Encom-pass bore primary responsibility for the payment of Justin's medical expenses. This settlement ended the federal court lawsuit and simultaneously resolved Kar-mol's declaratory judgment action.

Thus, six months after Karmol filed her circuit court complaint, she could rest assured that Encompass had assumed full responsibility for the costs of Justin's care. No medical bills remained unpaid, and Karmol had never been exposed to personal liability for the costs of Justin's care. Indeed, no evidence suggests that pay-ment for a single medical bill or other benefit had ever been delayed. The no-fault compensation system is intended to "provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978). Despite that an ERISA plan rather than a no-fault insurer initially paid Jus-tin's bills, Paramount and Encompass fulfilled the spirit

and purpose of the no-fault act by settling their differences without involving Karmol.

Moreover, given that Paramount never sought penalty interest or attorney fees against Encompass (and could not have successfully pursued such a claim under *Allstate Ins* Co, 118 Mich App at 607), we find perplexing Karmol's claim of entitlement to these sanctions. Indisputably, Karmol never paid any medical bills. Nor was Karmol ever threatened with a lien against a third-party recovery, or served with a reimbursement action. The ProMedica plan affords a right of reimbursement against Karmol, but specifically states that *"[a]s an alternative to reimbursement by the Member,* the Benefit Plan may subrogate to the Member's rights of recovery and remedies by joining in the Member's lawsuit, assigning its rights to Member to pursue on the Benefit Plan's behalf, or bringing suit in the Member's name as subrogee." (Emphasis added.) Here, after paying the medical bills for a year, the plan elected to seek reimbursement from Encompass. Simply put, no evidence suggests that Encompass delayed in paying no-fault benefits to Karmol. In relation to Karmol, no-fault benefits were never overdue. Indeed, no evidence suggests that Karmol incurred a single expense. Accordingly, the circuit court erred by denying summary disposition to Encompass on this ground.

Reversed and remanded for entry of judgment in favor of Encompass. We do not retain jurisdiction. As the prevailing party, Encompass may tax costs under MCR 7.219.

TALBOT, P.J., and HOEKSTRA, J., concurred with GLEICHER, J.